UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

PETER WEISS,

        Plaintiff,

   -v-                         No.  09 Civ. 1689 (LTS)(DCF)

THE DEPARTMENT OF EDUCATION OF
THE CITY OF NEW YORK,

        Defendant.

--------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

        Plaintiff Peter Weiss ("Plaintiff") asserts claims pursuant to Title VII of the Civil

Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), the New York State

Human Rights Law, N.Y. Exec. Law § 290 et seq. ("NYSHRL"), and the New York City Human

Rights Law, New York City Administrative Code § 8-101 et seq. ("NYCHRL"), against the

Department of Education of the City of New York ("DOE" or "Defendant") for unlawful

discrimination on the basis of age and religion, retaliation and maintenance of a hostile work

environment in connection with his employment as an Assistant Principal at the School for

Community Research and Learning ("SCRL") from October 2004 to August 2008.  Plaintiff also

alleges violations of his right to due process under the United States Constitution, made

actionable by 42 U.S.C. § 1983, and under the New York State Constitution.  The Court has

jurisdiction of Plaintiff's claims under 28 U.S.C. §§ 1331 and 1367.[1]

---

    [1]     The parties have stipulated to the withdrawal with prejudice of Plaintiff's claims made
pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.
("ADEA"), the Family Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA"), the

Defendant now moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The Court has considered thoroughly all of the parties' submissions and, for the following reasons, Defendant's motion is denied in part and granted in part.

BACKGROUND

The following material facts are undisputed unless otherwise indicated.[2] Plaintiff is a white Jewish male who has been employed by the DOE since 1991. In October 2004, Plaintiff was hired as interim acting assistant principal at SCRL, a school at the Adlai Stevenson Campus. According to Defendant, the decision to hire Plaintiff was made by the principal of SCRL, William Mulqueen ("Mulqueen"). According to Plaintiff, the decision was made by a committee of which Mulqueen was a member along with parents, students and teachers. Plaintiff was appointed to the position of Assistant Principal, Organization, and required to serve a five-year probationary term.

2004-2005 School Year

In the beginning of the 2004-2005 school year, Plaintiff learned of two incidents in which a swastika was drawn on a classroom blackboard. Plaintiff alleges that Mulqueen failed to investigate these incidents and instead laughed them off. Mulqueen testified that, following the first incident, he spoke with the teacher in whose classroom the swastika was found, as well

---

New York Civil Rights Law § 40-c, Civil Services Law § 75 and Labor Law § 201-d, and claims premised upon violations of the rights of freedom speech, freedom of association and equal protection of the laws under the United States and New York State Constitutions. (Stipulation and Order dated June 21, 2011, docket entry no. 29.)

[2] Facts characterized as undisputed are identified as such in the parties' statements pursuant to Local Civil Rule 56.1 or drawn from evidence as to which there is no non-conclusory, contrary factual proffer.

as two students and their parents, and that he was never informed of the second incident.

Throughout the school year, Mulqueen commented to Plaintiff that he did not like certain teachers and staff who worked at the Adlai Stevenson Campus, including a programer named Clara Crumper ("Crumper")[3], the dean of Adlai Stevenson High School Roger Benson ("Benson") and Plaintiff's mentor Bruce Levinberg ("Levinberg"), all of whom were Jewish and friends of Plaintiff.  Mulqueen would complain to Plaintiff about their "mannerisms."   In Crumper's case, Mulqueen did not like that she sometimes used Yiddish expressions like "gai gezunter heit" ("Go be well"), was absent for Jewish Holidays and would discuss religious practices in the office with Plaintiff.  When Crumper and Plaintiff engaged in these discussions, Mulqueen would get up from his desk, throw something on Plaintiff's desk or direct Crumper to do something.  Mulqueen and Benson clashed over the proper supervision of students from SCRL in the shared areas of the Stevenson campus, and Mulqueen complained again about Benson's mannerisms, some of which Plaintiff shared with Benson.

2005-2006 School Year

At some point during the 2005-2006 school year, Mulqueen observed Plaintiff eating a sandwich with pork in it and referred to Plaintiff as a "pork-eating Jew."  Mulqueen repeated the comment "several" times during the year.  Also, in the context of a conversation regarding the Jewish New Year, Mulqueen reportedly asked Plaintiff why he needed to "get right with God" when he had "all of the money in the basement."  Plaintiff found Mulqueen's comments strange at first and then offensive but, at the time, Plaintiff did not feel that the

---

[3]     The record is ambiguous as to the programmer's name.  It is spelled variously as Clara Crumper (Def.'s 56.1 Stm't ¶ 21), Claire Krumper (Weiss Aff. ¶ 146(c)) and Clara Krumper (Weiss Dep. 121).

comments were anti-Semitic.  Plaintiff did not complain to Mulqueen or to the DOE at any point

during the school year, though he was aware of the DOE's non-discrimination policy.

Meanwhile, Mulqueen continued to complain to Plaintiff about certain teachers and staff and

their mannerisms.

At the end of the school year, Mulqueen recommended that Plaintiff's

appointment be continued for the following year, noting that "Mr. Weiss has taken the lead on a

number of projects and he has a unique ability to work positively with students. . . .  Mr. Weiss

also meets regularly with students' parents to find positive and constructive ways to resolve

disciplinary issues." (Pedagogical Supervisory Personnel Report, Ex. J, Canfield Decl.)

<u>2006-2007 School Year</u>

During the 2006-2007 school year, Mulqueen referred to Plaintiff as a pork-eating

Jew on "three [or] four" occasions and continued to express his dislike for certain Jewish

teachers.  He spoke "derisively" about a particular Orthodox Jewish teacher, complaining that

she had to leave early on Friday to observe the Sabbath, and when Plaintiff tried to explain

something about Orthodox Judaism, Mulqueen "waived [him] off" and said he was not

interested.  (Weiss Aff. ¶ 15(g).)

On June 28, 2007, Plaintiff met with Mulqueen and others to discuss the hiring of

a new E.S.L. teacher.  According to Defendant, Plaintiff "started screaming and cursing" and was

"loud and disrespectful" toward Mulqueen and directed a "barrage of insults" at school counselor

Cari Cartagena. (Canfield Decl. Ex. K, L.)  Plaintiff denies that he made the comments attributed

to him and states that he never saw the memos, allegedly written by staff members who attended

the meeting, which attribute such words and conduct to him until the memos were produced by

Defendant in discovery for this matter.

   At the end of the academic year, Mulqueen recommended that Plaintiff's appointment be continued.  On Plaintiff's end of the year evaluation form, Mulqueen gave Plaintiff an S-rating, the highest rating available on the form, and repeated his comment from the previous year that "Mr. Weiss has taken the lead on a number of projects and he has a unique ability to work positively with students" and that Plaintiff "meets regularly with students' parents to find positive and constructive ways to resolve disciplinary issues."  (Pedagogical Supervisory Personnel Report, Ex. M, Canfield Decl.)

2007-2008 School Year

     "Per Session" Pay

   "Per session" employment pay is money earned by New York City teachers and supervisors for overtime hours worked outside of normal teaching time.  During his first few years at SCRL, Plaintiff earned per session employment pay when he worked nights and weekends to insure that all administrative matters relating to the operation of the school were handled properly.  He was the only assistant principal at the time, and no one else was available to do the necessary work, which included scheduling teachers, overseeing credits and transcripts for students, supervising the after school program and ensuring that all classes were staffed on a period by period basis with licensed teachers.  (Weiss Aff. ¶ 14.)  Prior to the 2007-2008 school year, Mulqueen approved all of Plaintiff's request for per session pay, resulting in 491.15, 470.3 and 367.30 hours of per session employment for the 2004-2005, 2005-2006 and 2006-2007 school years respectively.

   Early in the 2007-2008 school year, Plaintiff indicated that he did not want any

per session employment on Saturdays because he was becoming "more Orthodox" and would be observing the Sabbath.  According to the Plaintiff, Mulqueen belittled him and said that he was "finished" at SCRL.  (Weiss Aff. ¶ 15(e) & (f).)  Mulqueen also allegedly told Plaintiff that, in fact, there was no money in the budget for per session pay and, when Plaintiff submitted a request for per session pay after having worked over Labor Day weekend, "Mulqueen got angry, threw [the] request for overtime down on his desk and said 'there's no God damn money for overtime, you're not getting it and that's that.'"  (Weiss Aff. ¶ 15(j).)  Later, Mulqueen allegedly told Plaintiff that per session employment was available if Plaintiff was willing to teach Saturday school.  Plaintiff declined the offer, and no Saturday school was held that semester at SCRL. Plaintiff alleges that Mulqueen never actually intended to have Saturday school that semester, claiming that:

> [Mulqueen] offered me overtime that did not exist on a day that he knew that it was against my religious affiliations, as I had told him, generally, over the time I was becoming more [Orthodox] and going to an Orthodox temple, and, you know, that was the game he played.

(Weiss Dep. 169.)  When Mulqueen cut Plaintiff's per session employment opportunities, he said Plaintiff did not need the overtime wages because Plaintiff had "more money than God."  (Weiss. Aff. ¶ 15(j).)

In December 2007, Plaintiff discovered that, despite Mulqueen's representations that no per session employment was budgeted and that the only available per session employment was for Saturday school, Mulqueen had been approving per session requests for another assistant principal all semester.  Assistant Principal Daniel Byrd ("Byrd") was compensated for 116.15 hours of per session employment between September 2007 and February 2008.  Approximately

53 of those hours did not occur on Friday evenings, Saturdays, Jewish holidays or days when the

Plaintiff was absent.  Plaintiff met with Mulqueen to discuss the fact that Byrd had been

receiving per session employment pay.  According to Defendant, Plaintiff demonstrated "a great

deal of anger" toward Mulqueen.  Plaintiff disputes that he was visibly angry at the meeting and

alleges that it was Mulqueen, not Plaintiff, who acted inappropriately, demonstrating anger and

ripping up Plaintiff's per session request form.  (Weiss Aff. ¶ 42; Canfield Decl. Ex. Y.)

### Plaintiff's Absenteeism

Plaintiff had hip replacement surgery and was absent from work from July 3 until

August 12, 2008.  He used a combination of sick days and vacation time to cover that period of

absence.  Aside from his absence on account of hip surgery, Plaintiff was absent from work for

15 days during the 2007-2008 school year, including five days because of the flu, two days to

care for his disabled child and one day for the funeral of the wife of a co-worker.  Defendant

alleges that more than 10 days of absence constitutes excessive absenteeism.  Plaintiff alleges

that there is no written rule defining what constitutes "excessive absenteeism," leaving the phrase

to be applied subjectively.  He alleges further that Cari Cartagena, a non-Jewish guidance

counselor, was absent more than 50 days during the period from 2005 to 2008 for an average of

approximately 16 days of absence per academic year and that Cartagena was not disciplined for

her absences.  (Weiss Aff. ¶ 28.)

### Alleged Incidents of Insubordination

On June 13, 2008, Plaintiff left his sixth period class under the supervision of his

fully licensed co-teacher, Veronica Crichlow, while Plaintiff met with his union representative.

Plaintiff did not ask Mulqueen for permission to leave the classroom.  According to Defendant,

leaving a classroom without permission, even when the students are supervised by another licensed teacher, constitutes insubordination and dereliction of duty.  According to Plaintiff, non-Jewish teachers at SCRL, including Mulqueen, left their students completely unattended but were not disciplined.

Defendant has further alleged that Plaintiff was unprofessional or insubordinate on August 28 and October 17, 2007.  On August 28, 2007, Plaintiff met with Mulqueen and staff members.  Defendant has proffered evidence in the form of two memos written by staff members, alleging that, at the meeting, Plaintiff was "heated" and told a guidance counselor that she undermined his authority, did not demonstrate respect for him and was ineffective as a guidance counselor.  (Canfield Decl. Ex. N, O.)  Defendant has also proffered a memorandum signed by Secretary Cilindrello, indicating that, on October 17, 2007, Plaintiff handed her a per session pay request form with no time card attached and said "there better be fucking money for me."  (Canfield Decl. Ex. V.)  Plaintiff disputes that he made the comments attributed to him in the memos proffered by Defendant and states further that he never saw these memos allegedly written by his colleagues until they were produced by Defendant in discovery in this matter.

<u>Plaintiff's Evaluation for the 2007-2008 Academic Year</u>

Mulqueen gave Plaintiff a U-rating for the 2007-2008 academic year, the lowest rating available on the evaluation form, noting "Time and Attendance"; "Insubordination June 13, 2008 & December 20, 2007"; and "Dereliction of Duty" as the three reasons for the rating.  (Canfield Ex. II.)   Mulqueen recommended that Plaintiff's probationary appointment be discontinued.

Discontinuance Proceedings

        In a letter dated July 8, 2008, Superintendent Alexi Penzell ("Penzell") informed Plaintiff that she would be reviewing whether to discontinue his services as of August 8, 2008. Plaintiff received a second letter from Penzell, which was dated August 8, 2008, but which Plaintiff claims he received in early July. The second letter indicated that Penzell had reviewed Plaintiff's file and that Plaintiff's probationary appointment would be discontinued as of the close of business that day. Plaintiff informed the DOE that he wished to appeal his U-rating and discontinuance.

        The DOE Office of Appeals & Reviews held a hearing on September 7, 2008, addressing Plaintiff's U-rating and discontinuance. Plaintiff was represented at the hearing before the three-person Chancellor's Committee by a union representative, Carol Atkins ("Atkins"). At the hearing, Mulqueen testified that Plaintiff was excessively absent during the year, refused various requests from Mulqueen and frequently responded in anger to his requests, and failed to report to his class on June 13, 2008. On his own behalf, Plaintiff asserted that he had been prevented from calling a witness in violation of his right to due process, that he was denied adequate supervision and improperly prevented by Mulqueen from participating in a union mentoring support program, that he had never received a rating sheet from Mulqueen and that there were documents missing from his file. The Committee indicated that Plaintiff was not eligible for the mentoring program because, at the time he sought to apply, he had accrued more than two years of satisfactory service. After the cases were presented, the Committee made the following findings: (1) Plaintiff was excessively absent, (2) Plaintiff had made several angry outbursts during the hearing and ignored the hearing procedures, and (3) Plaintiff had been

unprofessional in his relationships with co-workers.  The Committee unanimously concurred with Mulqueen's recommendation.  On December 1, 2008, Penzell informed Plaintiff that, based on the Committee's report, she had reaffirmed his discontinuance.

On September 29, 2008, Plaintiff filed a notice of claim with the Office of the Corporation Counsel, alleging harassment, discrimination and retaliation based on his age, religion, and his disability.  On December 4, 2008, Defendant received notice that Plaintiff had filed a similar charge with the Equal Employment Opportunity Commission ("EEOC").  On January 7, 2009, the EEOC issued Plaintiff a "Right to Sue" letter and, on February 24, 2009, Plaintiff commenced this action.

DISCUSSION

Summary judgment is to be granted in favor of a moving party if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (the moving party bears the burden of establishing that there is no genuine issue of material fact).  A fact is considered material "if it might affect the outcome of the suit under the governing law," and an issue of fact is a genuine one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Holtz v. Rockefeller & Co. Inc., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Anderson, 477 U.S. at 248).  "[T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial."  Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002).  Specifically, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts and may not rely on conclusory allegations or unsubstantiated speculation."  Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (internal citations and quotation marks omitted).

Title VII and NYSHRL Claims

Hostile Work Environment

To demonstrate a hostile work environment under Title VII[4], an employee must satisfy both an objective and subjective standard. Kaytor v. Electric Boat Corp., 609 F.3d 537, 547 (2d Cir. 2010) (citing Harris v. Forklift Systems, Inc., 510 U.S. 17, 21-22 (1993)). The conduct complained of must be objectively so severe or so pervasive that a reasonable person would find it to be hostile or abusive, and the employee must subjectively perceive the environment to be hostile or abusive. Id.; see also Aulicino v. New York City Department of Homeless Serv., 580 F.3d 73, 82 (2d Cir. 2009). No single factor is required in order to demonstrate a hostile work environment. Id. The analysis focuses on the workplace as a whole, including instances of hostility towards others in the workplace. Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000). Generally, the discriminatory conduct must be more than episodic. Kaytor, 609 F.3d at 547.

"While the standard for establishing a hostile work environment is high," the United States Court of Appeals for the Second Circuit has "repeatedly cautioned against setting the bar too high, noting that while a mild, isolated incident does not make a work environment hostile, the test is whether the harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse." Terry v. Ashcroft, 336 F.3d 128, 148 (2d Cir. 2003) (citations and internal quotation marks omitted).

Plaintiff's allegations, construed in the light most favorable to him as the non-

---

[4]     Hostile work environment claims under the NYSHRL are governed by the same standards that govern such claims under Title VII. Ferraro v. Kellwood Co., 440 F.3d 96, 99 (2d Cir. 2006) (citing Forrest v. Jewish Guild for the Blind, 309 A.D.2d 546, 765 N.Y.S.2d 326, 332-33 (N.Y. App. Div. 2003)).

moving party, represent four years of repeated, offensive conduct on the part of Mulqueen

disparaging Plaintiff, Plaintiff's Jewish identity and the Jewish identity of Plaintiff's co-workers,

and at least one threat against Plaintiff in connection with his religious practice.  Mulqueen called

Plaintiff a "pork-eating Jew" several times over the course of one year and repeated the epithet

three or four times the following year, and Plaintiff alleges that he found the pork-eating-Jew

comment to be offensive and indicative of disdain for Jews.  Mulqueen made repeated remarks

over the course of four years about Plaintiff having lots of money, invoking a long-standing

negative stereotype of Jews as money hoarders.[5]  Mulqueen made repeated negative references

regarding Plaintiff's Jewish colleagues and their mannerisms, which, seen in the light most

favorable to Plaintiff, were motivated by anti-Jewish animus.  Several of Plaintiff's colleagues

quit or were terminated by Mulqueen, allegedly as a result of Mulqueen's anti-Semitism and,

when Plaintiff said he no longer wanted to work on Saturdays because he desired to observe the

Sabbath, Mulqueen allegedly responded by threatening Plaintiff, telling him "you're 'finished.'"

Taken as a whole, these allegations create genuine issues of material fact as to whether a

reasonable employee would have found the conditions of his employment to be hostile or

---

[5]     The negative stereotype of the money-hoarding Jew is at least as old as Christopher
Marlowe's sixteenth century play "The Jew of Malta," in which the villainous title
character is introduced to the audience "in his counting-house, with heaps of gold
before him" rhapsodizing about "[b]eauteous rubies, sparkling diamonds" and gold,
and opining:

> And thus methinks should men of judgment frame
> Their means of traffic from the vulgar trade,
> And, as their wealth increaseth, so inclose
> Infinite riches in a little room.

Christopher Marlowe, "The Jew of Malta" Act I, available at The Project Gutenberg,
http://www.gutenberg.org/files/901/901-h/901-h.htm, last visited Jan. 27, 2012.

abusive, and as to whether Plaintiff perceived his workplace as hostile or abusive.  Accordingly,

Defendant's motion for summary judgment dismissing Plaintiff's hostile work environment

claims brought pursuant to Title VII and NYSHRL will be denied.[6]

Religious Discrimination

Plaintiff alleges that Mulqueen's issuance of a U-rating for Plaintiff for the 2007-

2008 school year and his recommendation that Plaintiff be discontinued from his probationary

position as Assistant Principal were the products of anti-Jewish discrimination.[7]  In McDonnell

Douglas Corp. v. Green, 411 U.S. 792 (1973), the Supreme Court announced a three-step

burden-shifting formula for discrimination cases under Title VII.[8]  First, Plaintiff must make out

a prima facie case of discrimination.  McDonnell Douglas, 411 U.S. at 802.  To do that, he must

show that "(1) [he] is a member of a protected class; (2) [he] is qualified for [his] position; (3)

[he] suffered an adverse employment action; and (4) the circumstances give rise to an inference

of discrimination."  Weinstock v. Columbia University, 224 F.3d 33, 42 (2d Cir. 2000).  If

Plaintiff makes out a prima facie case of discrimination, the burden then shifts to Defendant, who

must articulate "some legitimate, nondiscriminatory reason for the [adverse employment

action]."  McDonnell Douglas, 411 U.S. at 802.  If the defendant does so, the burden reverts to

Plaintiff to demonstrate that Defendant's proffered reason is merely a pretext.  Id. at 804.

---

[6]  To the extent Plaintiff's hostile work environment claims are premised on age discrimination, there is no evidence in the record to support such a claim.

[7]  As Plaintiff has failed to oppose Defendant's argument that Plaintiff was not discriminated against based on his religion when he did not receive an equal number of per session or overtime employment opportunities during the fall semester of the 2007-2008 school year, the Court deems Plaintiff to have abandoned that aspect of his religious discrimination claim.

[8]  The same analytical framework governs discrimination cases brought under the NYSHRL.  Spiegel v. Schulman, 604 F.3d 72, 80 (2d Cir. 2010)

Plaintiff has made out a prima facie case of discrimination.  Being Jewish, he is a member of a protected class, and he was qualified for the position of Assistant Principal, as evidenced by his appointment to the position, albeit on a probationary basis, and by the repeated recommendations of Mulqueen that he continue in that position.  In 2008, Plaintiff suffered an adverse employment action— that is, a U-rating followed by Mulqueen's recommendation that Plaintiff's employment be terminated.  Plaintiff has also proffered evidence that gives rise to an inference of discrimination.  Plaintiff has alleged that, at the beginning of the 2007-2008 school year, when Plaintiff told Mulqueen that he "had become more observant and was attending an Orthodox synagogue" and, therefore, did not want to work overtime on Saturdays, Mulqueen "belittled" him and said Plaintiff was "finished at SCRL." (Weiss Aff. ¶ 15(e) & (f).)  Mulqueen then told Plaintiff that, in fact, there was no money for overtime pay in the budget that year (Weiss Dep. 165-66) and, when Plaintiff submitted a request for overtime pay after working on Labor Day, "Mulqueen got angry, threw [the] request for overtime down on his desk and said 'there's no God damn money for overtime, you're not getting it and that's that.'" (Weiss Aff. ¶ 15(j).)  Plaintiff later discovered that a non-Jewish assistant principal, Daniel Byrd, had been compensated for per session (overtime) work throughout the fall semester of that year.  Daniel Byrd was compensated for 116.15 hours of per session work between September 2007 and February 2008, and approximately 53 of those hours did not occur on Friday evenings, Saturdays, Jewish holidays or days when the Plaintiff was absent from school.  (Def.'s 56.1 Stm't ¶ 78.)  Also, when Plaintiff discussed the Jewish high holy days and explained that Yom Kippur is a holiday of penitence and "getting right with God," Mulqueen responded "you have to get right with God?  With all that money in the basement?  What did you do that you have to get right with God?" (Weiss Dep. at 143-44.)  These allegations are sufficient to give rise to an

inference of discriminatory motive.

Defendant argues that Plaintiff's proffers are insufficient to give rise to an inference of discrimination because Mulqueen, the individual responsible for giving Plaintiff a U-rating, was also the person responsible for hiring Plaintiff.  Under the "same actor" rationale, when the person who hired the employee is also the person who decided to fire the employee, "it is difficult to impute to him an invidious firing motivation that would be inconsistent with his decision to hire," "especially when the firing occurred only a short time after the hiring."  Jetter v. Knothe Corp., 324 F.3d 73, 76 (2d Cir. 2003); Grady v. Affiliated Cent., Inc., 130 F.3d 553, 560 (2d Cir. 1997) (applying the same actor rationale against a plaintiff in an age discrimination case where the plaintiff was fired nine days after being hired).  In the instant case, the firing occurred a full four years after Plaintiff was hired and Plaintiff's religious self-identification and practice changed materially during that time, as Plaintiff had indicated that he was becoming more Orthodox and had started observing the Sabbath.  In light of these allegations of changed circumstances, Defendant's contention that the same actor rationale precludes an inference of discriminatory motive is unavailing.

Plaintiff having established a prima facie case, the burden shifts to Defendant to proffer some legitimate, nondiscriminatory reason for the adverse employment action. Defendant has met this burden.  On the evaluation form that Mulqueen used to give Plaintiff a U-rating, Mulqueen indicated that the basis for the rating was Plaintiff's attendance record (Plaintiff was absent for 15 days during the 2007-2008 school year, aside from an excused absence for hip surgery and recuperation); insubordination on December 20, 2007 (Plaintiff allegedly "demonstrated a great deal of anger at Principal Mulqueen"); and dereliction of duty and insubordination on June 13, 2008 (Plaintiff, without permission from a supervisor, left his

class under the supervision of his fully licensed co-teacher so that Plaintiff could speak with his CSA representative).  These are legitimate, nondiscriminatory reasons for the adverse employment action, so the burden shifts to Plaintiff to offer evidence that the reasons are mere pretext.

To satisfy his burden, Plaintiff must "produce 'not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely than not discrimination was the real reason for the discharge.'" Hongyan Lu v. Chase Inv. Serv. Corp., 412 Fed. App'x 413, 416 (2d Cir. 2011) (citing Van Zandt v. Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir. 1996)).  To demonstrate that an employer's proffered reasons are false, the Plaintiff does not need to dispute that he engaged in the alleged misconduct; rather, it is sufficient for the Plaintiff to provide evidence that would support a finding that any misconduct proffered by Defendant as the basis for his termination of employment was not the actual reason for the termination.  In McDonnell Douglas, the defendant proffered that the plaintiff was not rehired because he had engaged in illegal actions against the defendant as part of a civil rights campaign.  Even though the plaintiff admitted to having engaged in such illegal conduct, the Supreme Court held that the plaintiff was still entitled to demonstrate that the reliance on illegal conduct was mere pretext for racial discrimination.  Id.  The Supreme Court explained that the defendant "may justifiably refuse to rehire one who was engaged in unlawful, disruptive acts against it, but only if this criterion is applied alike to members of all races."  Id.  In evaluating whether an employer's adverse employment action was motivated by a discriminatory motive, the trier of fact may consider how similarly situated employees were treated.  Id.  Also, the trier of fact can, in appropriate circumstances "reasonably infer from the falsity of the [employer's] explanation that the

employer is dissembling to cover up a discriminatory purpose." Schnabel v. Abramson, 232 F.3d 83, 89 (2d Cir. 2000) (quoting Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 147 (2000)).

Plaintiff has tendered evidence suggesting that the reasons proffered on his evaluation to justify his U-rating were not the actual reasons for his U-rating and recommendation of discontinuance. The evaluation form indicated that Plaintiff was given a U-rating for insubordination and dereliction of duty because, on June 13, 2008, Plaintiff left his classroom to meet with his union representative. It is uncontested that, when Plaintiff left his classroom that day, a fully licensed co-teacher remained in the classroom supervising the students there, and Plaintiff has proffered in an affidavit that non-Jewish teachers, including Mulqueen, left their classrooms completely unattended without being disciplined, such that, even if Defendant had a rule prohibiting this conduct, the rule was not enforced uniformly. The evaluation form also indicated that Plaintiff received a U-rating because of his conduct on December 20, 2007, when Plaintiff met with Mulqueen to discuss his opportunities for per session work and allegedly demonstrated a "great deal of anger" toward Mulqueen at the meeting. (Canfield Decl. Ex. W.) Plaintiff disputes that he was angry at the meeting, alleging that it was Mulqueen, not Plaintiff, who acted inappropriately, demonstrating anger and ripping up Plaintiff's per session request form. (Weiss Aff. ¶ 42; Canfield Decl. Ex. Y.) Lastly, the evaluation form indicates that Plaintiff was given a U-rating because of his attendance record, but Plaintiff has proffered that he was absent less than a similarly situated non-Jewish employee who was not disciplined. Plaintiff was absent 15 days during the 2007-2008 school year, including five days because of the flu, two days to care for his disabled child and one-day for the funeral of the wife of a co-worker. (Weiss Aff. ¶ 25.) Guidance counselor Cari Cartagena, who

is not Jewish, was absent more than 50 days during the period from 2005 to 2008 for an average of approximately 16 days of absence per school year, but Cartagena was not disciplined for her absences.  (Weiss Aff. ¶ 28.)  Based on this evidence, a rational jury could find that the reasons proffered for Plaintiff's U-rating were not the actual reasons for the rating or the recommendation that Plaintiff's employment be terminated.

In its brief, Defendant proffers more nondiscriminatory reasons, in addition to the reasons indicated on the 2007-2008 evaluation form, as to why Plaintiff was given a U-rating and then recommended for termination.  These reasons are that Plaintiff's attitude changed, that he began having confrontations with colleagues during the 2006-2007 school year and that, in October 2007, Plaintiff submitted a per session request sheet without a time card attached and said "there better be fucking money for me."  Plaintiff disputes, albeit in a conclusory manner, that he made such a comment and that his attitude changed in 2006-2007 but, even accepting Defendant's additional allegations of misconduct as true, they do not warrant summary judgment in Defendant's favor.  That these reasons were not indicated on Plaintiff's evaluation form at the time he was given a U-rating provide some support for the conclusion that they are post hoc and pretextual.  Further, to the extent these additional proffers reference conduct from the 2006-2007 school year, Defendant has not explained why, if Plaintiff's misconduct was considered serious by Defendant, it was not indicated on Plaintiff's 2006-2007 evaluation form, wherein Mulqueen gave Plaintiff the highest rating possible.  Additionally, Plaintiff has proffered other evidence, including Mulqueen's insensitive comments about Plaintiff's religion and the way Mulqueen reacted to Plaintiff's heightened religious practice to create a triable issue of fact for a jury.

For the foregoing reasons, Defendant's motion for summary judgment in its favor on Plaintiff's claim of religious discrimination will be denied.

<u>Retaliation</u>

Plaintiff claims that he frequently complained to Mulqueen about his "offensive conduct and the hostile work environment created by his religious discrimination." (Compl. ¶ 29.) According to Plaintiff, Mulqueen then retaliated against him by giving him fewer per session opportunities, giving him a U-rating for the 2007-2008 school year, and recommending that his probation be discontinued.

To prevail on a retaliation claim pursuant to Title VII[9], Plaintiff must demonstrate that "(1) he engaged in protected participation or opposition under Title VII . . . , (2) that the employer was aware of this activity, (3) that the employer took adverse action against the plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action." <u>Kessler v. Westchester County Dep't of Social Servs.</u>, 461 F.3d 199, 205-06 (2d Cir. 2006).

Here, Plaintiff cannot make out a prima facie case of retaliation. The only evidence in the record is Plaintiff's conclusory allegation that he repeatedly complained to Mulqueen about his offensive comments regarding Plaintiff and Plaintiff's friends. (Weiss Aff. ¶ 15; Compl. ¶ 31.) However, Plaintiff's own deposition testimony indicates that he mentioned his complaints only to other teachers in the building, family members and his rabbi. (Weiss Dep. at 147.) Further, Plaintiff testified that, even after he began to think of Mulqueen's comments as anti-Semitic, he did not complain to Mulqueen or report his conduct to anyone else at the DOE. (<u>Id.</u> at 175.) Plaintiff cannot create a material issue of fact by submitting an affidavit making

---

[9]     The standard for retaliation claims is the same under Title VII and the NYSHRL. <u>Schanfield v. Sojitz Corp. of America</u>, 663 F. Supp. 2d 305, 341 (S.D.N.Y. 2009) (citing <u>Leopold v. Baccarat, Inc.</u>, 174 F.3d 261, 264 n.1 (2d Cir. 1999)).

conclusory and speculative allegations that directly contradict his deposition testimony.

Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 104 (2d Cir. 2010).  The record is devoid of

any specific allegations of complaints made to Mulqueen or to the DOE's Office of Equal

Employment Opportunity ("OEEO").  Nothing in the record suggests that Mulqueen either

overheard his complaints or was told about them by anyone else and, therefore, Plaintiff cannot

show that he engaged in a protected activity or, if he did, that Mulqueen was aware of it.

Accordingly, Plaintiff has failed to make the required prima facie demonstration of retaliatory

conduct, and Defendant is entitled to summary judgment on the Title VII and NYSHRL

retaliation claims.

NYCHRL Claims

        Pursuant to the Local Civil Rights Restoration Act of 2005, N.Y.C. Local Law

No. 85 (2005), the NYCHRL "explicitly requires an independent liberal construction analysis in

all circumstances, even where state and federal civil rights laws have comparable language."

Loeffler v. Staten Island Univ. Hosptial, 582 F.3d 268, 278 (2d Cir. 2009) (quoting Williams v.

N.Y. City Hous. Auth., 61 A.D.3d 62, 66-69 (N.Y. App. Div. 2009)).  "[T]he Restoration Act

notified courts that (a) they had to be aware that some provisions of the [NYCHRL] were

textually distinct from its state and federal counterparts, (b) all provisions of the [NYCHRL]

required independent construction to accomplish the law's uniquely broad purposes, and (c)

cases that had failed to respect those differences were being legislatively overruled." Id. (quoting

Williams, 61 A.D.3d at 69)).  "There is now a one-way ratchet: 'Interpretations of New York

state or federal statutes with similar wording may be used to aid in interpretation of [NYCHRL],

viewing similarly worded provisions of federal and state civil rights laws as a floor below which

the [NYCHRL] cannot fall.'" Id. (quoting the 2005 Restoration Act § 1).

Defendant's motion for summary judgment dismissing Plaintiff's NYCHRL claims that he was subject to a hostile work environment and that he was discriminated against on the basis of his religion will be denied, because, as explained above, Defendant has failed to demonstrate that it is entitled to judgment as a matter of law on Plaintiff's analogous federal and state law claims, and those federal and state law claims create a floor below which the NYCHRL cannot fall.

Defendant's motion for summary judgment dismissing Plaintiff's NYCHRL claim that he was retaliated against will, however, be granted. To state a claim for retaliation pursuant to the NYCHRL, a Plaintiff must allege that he was retaliated against because he did one of the following:

> (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter, (iv) assisted the commission or the corporation counsel in an investigation commenced pursuant to this title, or (v) provided any information to the commission pursuant to the terms of a conciliation agreement made pursuant to section 8-115 of this chapter.

NYCHRL, N.Y. City Administrative Code § 8-107(7). As explained above in the context of Plaintiff's federal and state retaliation claims, Plaintiff has proffered no evidence nor any non-conclusory allegation that he made complaints to Mulqueen or anyone else in authority, or that Mulqueen new of any such complaints. Accordingly, Defendants' motion for summary judgment dismissing Plaintiff's NYCHRL retaliation claim will be granted.

Constitutional Due Process Claims

Plaintiff claims that he was denied his constitutional right to due process under the

United States and New York State Constitutions.  He alleges that he received the letter which affirmed his discontinuance two weeks before the date of the letter, suggesting that he was not given a fair hearing by the Superintendent's office.  He also alleges that he was prevented from presenting witnesses at his hearing before the Chancellor's Committee and that he was wrongly accused of loud and disruptive outbursts during the hearing.

In a suit under 42 U.S.C. § 1983 for violation of a procedural due process right, the Court must determine "(1) whether a property interest is implicated, and, if it is, (2) what process is due before [P]laintiff may be deprived of that interest."  Nnebe v. Daus, 644 F.3d 147, 158 (2d Cir. 2011).  In general, the same analysis governs due process claims under the New York State Constitution, although the state courts have at times given greater protection to parties under the state due process clause in the criminal context.  See Hernandez v. Robles, 855 N.E.2d 1, 5 (N.Y. 2006) ("In general, we have used the same analytical framework as the Supreme Court in considering due process cases, though our analysis may lead to different results.")

It is undisputed that Plaintiff, as a probationary employee, had no property interest in his continued employment as an Assistant Principal.  See N.Y. Educ. Law § 2590-j(7)(a) (McKinney 2010) ("No [teacher or supervisor] who has served the full and appropriate probationary period prescribed by, or in accordance with law, shall be found guilty of any charges except after a hearing . . . .") (emphasis added); Finley v. Giacobe, 79 F.3d 1285, 1297 (2d Cir. 1996) (citing Meyers v.  City of New York, 208 A.D.2d 258, 622 N.Y.S.2d 529, 532 (N.Y. App. Div.1995) ("It is well settled that a probationary employee, unlike a permanent employee, has no property rights in his position and may be lawfully discharged without a hearing and without any stated specific reason.")).

Further, even if Plaintiff could show that he was entitled to due process, the record

shows that he received it.  Plaintiff was represented by his Union at a hearing before the

Chancellor's Committee on his U-rating and discontinuance.  (Chancellor's Committee Report,

Canfield Decl., Ex. PP.)  His union representative put on a case, the summary of which is

included in the Committee report.  (Id. at 3-4)  Plaintiff addressed the Committee on his own

behalf as well.  (Id.)  That Plaintiff disagrees with the outcome of the hearing does not mean that

he was denied due process.  Plaintiff could also have challenged his U-rating and discontinuance

in an Article 78 proceeding before the New York State Supreme Court but chose not to avail

himself of that procedural avenue.  N.Y. C.P.L.R. § 7801 et seq. (McKinney 2010).

      Plaintiff has also failed to allege that his rights were deprived as a result of a

municipal policy or custom, a necessary predicate for municipal liability under section 1983.

Monell v. Department of Social Servs., 436 U.S. 658, 690-91 (1978).  Plaintiff's allegations of a

conspiracy between Superintendent Penzell, Mulqueen, and the Chancellor's Committee are

entirely conclusory and without support in the record.

      Accordingly, Defendant's motion for summary judgment is granted as to

Plaintiff's due process claim.

CONCLUSION

      For the foregoing reasons, Defendant's motion for summary judgment is denied

with respect to Plaintiff's claims of hostile work environment and religious discrimination made

pursuant to Title VII, NYSHRL and NYCHRL.  Defendant's motion is granted in all other

respects.  Accordingly, the current status of Plaintiff's claims is as follows:

- the hostile work environment claims (First and Third Causes of Action) remain
for trial;

- the religious discrimination claims (First Cause of Action) remain for trial;

- the retaliation claims (Second and Fourth Causes of Action) are dismissed pursuant to this Memorandum Opinion and Order;

- the Civil Rights Law § 40-c claim (Fifth Cause of Action) has been withdrawn pursuant to the parties' joint stipulation;

- the Civil Rights Law § 75 claim (Sixth Cause of Action) has been withdrawn pursuant to the parties' joint stipulation;

- the claims premised on violations of the rights of freedom of speech, freedom of association and equal protection of the laws under the United States and New York Constitutions (Seventh Cause of Action) have been withdrawn pursuant to the parties' joint stipulation;

- the claim for a violation of the right to Due Process (Seventh Cause of Action) is dismissed pursuant to this Memorandum Opinion and Order;

- the Family Medical Leave Act claim (Eighth Cause of Action) has been withdrawn pursuant to the parties's joint stipulation;

- the Age Discrimination and Employment Act claim (Ninth Cause of Action) has been withdrawn pursuant to the parties' joint stipulation; and

- the claims for age discrimination brought under Title VII, NYSHRL and NYCHRL (Ninth Cause of Action) are dismissed pursuant to this Memorandum Opinion and Order.

The parties are directed to meet with Magistrate Judge Freeman promptly for settlement purposes. A final pretrial conference will be held before the undersigned on **Monday, May 21, 2012, at 12:30 p.m.** The parties must confer and make their submissions in advance of the final

pretrial conference as specified in the October 9, 2009, Pre-trial Scheduling Order (docket entry

no. 6).

       This Memorandum Opinion and Order resolves docket entry number 18.

       SO ORDERED.

Dated: New York, New York
      March 29, 2012

 

                                       LAURA TAYLOR SWAIN
                                    United States District Judge